## State *v.* McLean.

[68 South. 772.]

1. Banks and Banking. *Receiving deposits in insolvent bank. Statutory offenses. Indictment. Sufficiency.*

Section 1169, Code 1906, as amended by Laws 1912, chapter 211, is repealed by section 52, chapter 124, Laws 1914, commonly called the State Banking Law, in so far as they deal with the offense of receiving deposits while the bank is insolvent, since such Banking Law covers the whole subject-matter of banking and section 52 of this act provides the protection and defines the offense previously dealt with by section 1169 of the Code of 1906.

2. Banks and Banking. *Receiving deposits in insolvent banks. Indictment. Sufficiency.*

Under Laws 1914, chapter 124, section 52, an indictment charging officers of an insolvent bank with receiving deposits in violation of law, must allege that the officers knew the bank was insolvent.

Appeal from the circuit court of Jefferson Davis county.

Hon. A. E. Weathersby, Judge.

A. L. McLean and others were indicted for receiving deposits in an insolvent bank. From an order sustaining a demurrer to the indictment the state appeals.

The facts are fully stated in the opinion of the court.

*Ross A. Collins,* Attorney-General for the state.

The question now before this court is the correctness of the judgment of the court below in sustaining these demurrers; is simply to place the proper construction upon the legislative intent and effect of the enaction of section 52, chapter 124, of the Laws of 1914. If it be held, as appellee contends, that the provision of sec-

tion 1169, of the Code, has been repealed thereby, the action of the lower court was correct, but if on the contrary, as the state contends, section 1169, of the Code, was not repealed, the judgment of the lower court should be overruled. At best, it can but be said that the section in the Code was repealed by implication as the provision was inserted in this new law to the effect that only · such acts and parts of acts in conflict with it are repealed thereby in so far as they are in conflict. The same act provides that none of the statutes of this state shall be construed to be amended, modified or repealed except so far as necessary to permit the unrestrained operation of this act as applied to banks participating in the privileges of this act (section 45, chapter 124, of the Laws of 1914). It is a well-known principle of law in cases where a clause is inserted in a statute repealing all laws in conflict or inconsistent with it, that if the provisions of the former and present enactments are in direct contrariety the repeal takes place but only to the extent of the repugnance, and such statute abrogates the prior law no further than its actual words require. The law does not favor repeals by implication and it will not be adjudged to have occurred except when the intent is clearly manifest and it is well established that statutes are strictly construed in restraint and limitation of repeals and the legislative intent is never *prima facie* present. On page 163 of Bishop on Statutory Crimes, the rule is laid down, that:

"Statutes in derogation of the common law, or of a prior statute, are construed strictly, not operating beyond their words, or the clear repugnance of their provisions; that is, the new displaces the old only as directly and irreconcilably opposed in terms." The legislature in prescribing and limiting the effect of this new law in regard to the penalty for the offense of receiving deposits in an insolvent bank, expressly said

that it did not purport to be a revision of the whole subject but merely repealed prior statutes to the extent of their repugnance. In this case, instead of purporting to revise the whole offense, it simply enacts what is consistent with the prior law or re-enacts such law and a court cannot know that the legislature meant what it did not say; that is, to repeal all laws which may exist with those which it establishes, and the principle above is laid down in section 160, of Bishop on Statutory Crimes, 3rd Edition as follows:

"In principle, and equally of the better American authorities and of the English, the just doctrine is that, without exception, a statute in affirmative terms, with no intimation of an intent to repeal prior laws, does not repeal them, unless the old and the new are irreconcilably in conflict."

In *White* v. *Johnson*, 23 Miss. 68, in the construction of an analogous statute, the principle above was enunciated as follows: "A series of acts upon the same subject are to be construed as a whole; and where, in a subsequent statute, there is no express repeal of a former, the former statute will not be held to be repealed by implication, unless there be a plain and unavoidable repugnancy between them." Also see *Pons* v. *State*, 49 Miss. 1.

The question before us now is, whether or not by enacting this last statute which but partially covers the offense as formerly prescribed, the legislature intended to repeal the most salutary features of a wise and much needed law. If such is held to be the case, then I submit that convictions under the law as expressed by this last enacted statute will be few and far between, for under the provision that absolute knowledge of the insolvent condition of the bank is necessary to maintain the prosecution it will be indeed a difficult matter to meet the required degree of proof with such a burden cast upon the state.

*Scott & Parker,* for appellees.

The attorney-general relies upon the rule that repeals of statutes by implication are not favored, and that the courts will not construe a former statute to be repealed by implication, unless there is a plain and unavoidable repugnancy between them. To this rule, we take no exception. But it is our contention that this is only one of the rules of construction of statutes followed by the courts in cases of this kind, all of which rules serve only the purpose of aiding the court in ascertaining the intention of the legislature in the enactment of the last law; as was said by this court in the case of *Ex Parte McInnis,* 54 So. 260: "The intention of the legislature in this, as in all other instances, is the cardinal rule of construction." And in seeking to ascertain the true intent of the legislature, a great many things may be looked to. But in this case, we are of the opinion that the application of the rule that repeal by implication is not favored and will not be pronounced except in those cases where there is an irreconcilable conflict in the two acts will not cause any difficulty here, but that when the court undertakes to harmonize the two acts in question in this case, the conflict will become more apparent and the repugnancy unavoidable, which we will undertake to show later in this brief.

It is our contention that the intention of the legislature can always be more easily ascertained by following the history of the legislature in question, looking to the evil to be remedied and the changes, if any, in the new conditions. And after properly regarding these features, it may be that the intention of the legislature may be made manifest, and a repeal by implication accomplished under some circumstances even though there is no repugnancy. The rule as stated in the cases of *Myers* v. *Marshall County,* 55 Miss. 344, *Swan* v. *Buck,* 40 Miss. 308, and *Gibbons* v. *Brittenum,* 56 Miss. 232,

109 Miss.—34

that: "It is a well-settled rule of interpretation that, although the subsequent statute be not repugnant in all of its provisions to a prior one, yet if the later statute was clearly intended to prescribe the only rule that should govern in the cases provided for, it repeals the original act."

And the rule stated in *Mobile & Ohio Railroad Company* v. *Weiner,* 49 Miss. on page 739 that: "The general rule is that when any statute is revised, or when one statute is framed from another, some parts being omitted, the parts omitted, are to be considered as annulled."

Aside from the consideration of the repugnancy of the two acts, in this case, it must have been the intention of the legislature, as we undertook to show in our other brief, to rewrite the law in regard to the receipt of deposits in an insolvent bank and to prescribe the only remedy and penalty against the same, and by the rules just quoted to work a repeal by implication.

But when the attorney-general's brief named the rules of construction in regard to the disfavor felt toward implied repeals, we hoped that he would apply the rules in this case and show how the application of these rules to the two statutes would uphold them both and give us an idea as to what the law is by the blending of the two. It will be remembered that it is not every forced consistency that will uphold a statute, but as stated in the case of *Commercial Bank* v. *Chambers,* 8 Sm. & M. 9, it is that repugnancy and inconsistency that is made to appear after giving each act a fair construction.

We can conceive of no possible way of construing these two acts so as to give effect to both, and leave the phrase "or having good reason to believe" of force and effect in section 1169 except to say that the legislature intended to originate and prescribe an additional crime by section 52 of the Acts of 1914, chapter

124, so that an officer of a bank, knowing the same to be insolvent, and who informs the depositor of such insolvency, but receives the deposit, has violated the law also but his penalty will be different to what it would have been had he not informed the depositor. And the strange feature about that punishment would be that the officer who did not inform the depositor might receive a very short term in the penitentiary, while the officer who informed the depositor, if sentenced to the penitentiary must be sent for less than one year.

By a further application of this construction, it will be seen that we must impute to the legislature the intention of saying that it shall be no complete defense to an officer of a bank to inform a depositor of the insolvency of the bank when a deposit is received, so long as such officer knows that his bank is insolvent. But the officer who does not know the bank to be insolvent may successfully defend by proving to others that he informed them of facts which he himself did not know. The invitation is extended to a bank official who does not know the condition of his bank to inform others of this condition.

It will be noticed further that so long as the penalty under the two acts is different, if both may stand and be in force at the same time the courts would be troubled when trying an officer under the charge of "having good reason to believe" for fear that they might prove that he knew instead of only having good reason to believe and thereby be proven guilty of a different crime than the one charged.

We see no way to apply a fair construction of these two acts which will save the two from being repugnant, and therefore respectfully submit that the judgment of the court below should be affirmed.

STEVENS, J., delivered the opinion of the court.

This appeal is prosecuted by the state in two cases, No. 18127 and No. 18140, from an order sustaining a

demurrer to the indictment in each case, charging appellees, officers and directors of the People's Bank of Bassfield, Miss., with receiving deposits in an insolvent banking establishment. The indictments are alike, and the material or charging part of the indictment, case No. 18140, is as follows:

"That A. S. McLean, D. W. Dickens, D. N. McLean, V. T. Rudder, Dr. E. N. Blount, O. T. Hathorn, and Jim Oates, in said county and state, on or about the 23d day of April, A. D. 1914, being then and there and for a long time prior thereto agents, officers, managers, and employees of the People's Bank, a corporation duly incorporated by and under the laws of the state of Mississippi, and domiciled in the village of Bassfield, Jefferson Davis county, Miss., the said A. S. McLean, being then and there the cashier of said bank, and being thereby an agent, officer, employee, and manager of said bank, and the said D. W. Dickens being then and there the assistant cashier of said bank, and being thereby an agent and employee of said bank, and the said V. T. Rudder being then and there the acting president of the bank, and being thereby an agent, officer, manager, and employee of said bank, and the said Dr. E. N. Blount being then and there the acting vice president and a member of the board of directors of the said bank, and being thereby an agent, manager, and officer of said bank, and the said D. N. McLean, O. T. Hathorn, and Jim Oates being then and there members of the board of directors of the said bank, and being thereby agents, officers and managers of the said bank, which said bank was then and there and for a long time prior thereto engaged in the business of receiving on deposit the money and other valuable things of other persons, and as such agents, officers, managers, and employees aforesaid, being then and there engaged in conducting the business of receiving on deposit the money and

other valuable things of other persons for the said
bank, which said bank was then and there wholly in-
solvent and the said A. S. McLean, D. W. Dickens
D. N. McLean, V. T. Rudder, Dr. E. N. Blount, O. T.
Hathorn, and Jim Oates, agents, officers, managers,
and employees aforesaid, then and there having good
reason to believe that the said bank was then and there
insolvent, did then and there unlawfully and feloniously
receive a deposit in the said bank from ·one A. W.
King, a depositor, the said deposit· being then and
there a check for the sum of seventy-six dollars, and
of the value of seventy-six dollars, the property of the
said A. W. King, that is to say, the said check then
and there consisted of a writing on paper duly signed
by J. J. Newman Lumber Company, and drawn on
First National Bank of Commerce, Hattiesburg, Miss.,
directing the said First National Bank of Commerce
to pay to the order of the said A. W. King the said
sum of seventy-six dollars, and which said check was
then and there duly indorsed by the said A. W. King,
and which said check was then and there received for
deposit in the said People's Bank, and the said A. S.
McLean, D. W. Dickens, D. N. McLean, V. T. Rudder,
Dr. E. N. Blount, O. T. Hathorn, and Jim Oates, agents,
officers,· managers, and employees aforesaid, did not
then and there or at any time prior thereto inform the
said A. W. King, the depositor aforesaid, that the said
People's Bank was then and there insolvent.''

The indictment seems to have been drawn under
section 1169, Code of 1906, as amended by chapter 211,
Laws 1912, and is, under the act of 1912, a good in-
dictment.

It is the contention of counsel for appellees, and
was the opinion of the trial judge, that chapter 211,
Laws 1912, is repealed by section 52, chapter 124, Laws
of 1914, commonly called the State Banking Law, in
so far as they deal with the offense of receiving de-

posits while the bank is insolvent. The portion of chapter 211, Laws 1912, material to this inquiry is as follows:

"If the president, manager, cashier, teller, assistant, clerk, or other employee or agent of any bank or broker's office or establishment conducting the business of receiving on deposit the money or other valuable things of other persons, . . . shall receive any deposit knowing, or having good reason to believe, the establishment to be insolvent without informing the depositor of such condition, on conviction, he shall be imprisoned in the penitentiary not longer than five years."

Section 52, Laws of 1914, deals with the same subject-matter. It has this specific title, "Penalty for Receiving Deposits When Insolvent," and reads as follows:

"Penalty for receiving deposits when insolvent. The owners or officers or employees of any bank or branch bank who shall receive any deposit knowing that such bank or branch bank is insolvent shall be deemed guilty of felony and punished, upon conviction therefor, by a fine not exceeding one thousand dollars, or imprisonment in the state penitentiary not exceeding two years, nor less than one year or by both such fine and imprisonment, at the discretion of the court, for such offense."

This entire act of 1914, as indicated by its general title, brought into our statute law new, far-reaching, and constructive legislation, designed to establish a general banking department of the state; to provide for examination, regulation, and control of state banks, under supervision of bank examiners; to fix "qualifications and liability of officers, stockholders, and directors of banking corporations," and to fix "the qualifications and liability of persons, firms and corporations in the banking business;" to prohibit entirely

state banking, except under the provisions of this act; and to provide for the guaranty of deposits; and for other purposes. The act, among other things, gives the bank examiners complete access to all records, assets, and all information of the most private nature, and makes it the duty of the examiners to liquidate a bank when they find it to be insolvent. Section 29 provides that:

"No corporation except a national bank or postal savings bank shall carry on a banking business, except in compliance with this act."

This law requires every bank to be incorporated, and its general provisions apply to every state bank in Mississippi, and on and after its approval a "new order" rules in the banking business of the state. Section 45 provides that:

"All acts and parts of acts in conflict with this act are hereby repealed in so far as they so conflict, but no provision of any banking law or other statute of this state shall be construed to be amended, modified or repealed except in so far as necessary to permit the unrestricted operation of this act as applied to banks participating in the privileges of this act."

And the latter part of section 68 announces that:

"All laws or parts of laws in conflict with this act are hereby repealed."

It will be noted that section 52 is, in substance, a re-enactment of section 1169 of the Code, as amended by Laws of 1912, with the following two clauses omitted, viz.: "Or having good reason to believe the establishment to be insolvent" and "without informing the depositor of such condition."

As is well said in the splendid brief of counsel for appellees:

"Surely section 1169 has not been amended, modified, or repealed for one class of banks" and left in force "for another class of banks;" and that "if there is

any conflict in section 52 of chapter 124 and section 1169 of the Code of 1906, so that a repeal for any purpose or for any bank is affected, then such change is made for and applies to all banks and for all purposes;" that "the Laws of 1914 change the conditions existing between the bank and the depositor."

We cannot escape the conclusion that the enactment of section 52 of the new law repeals section 1169 of the Code, as amended by Laws 1912, and, measuring the indictment in this case by the requirements of section 52, it is defective in failing to charge that appellees knew the bank to be insolvent.

The legislature had under consideration the passage of this general banking law, intended to cover the whole subject-matter of banking, and section 52 was evidently incorporated to provide the protection and to define the offense previously dealt with by section 1169. The trial court therefore was, in our judgment, correct in sustaining the demurrer to the indictments, and both cases are therefore affirmed.

*Affirmed.*